IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | Criminal No.   8:23-CR-126 |
| ) | |
| **v.** ) | |
| ) | |
| **RUBEN ALTUNAR-LOPEZ,** ) | |
|   aka "Hervin Lopez-Javier," ) | |
| ) | |
|   **Defendant.** ) | |

## UNITED STATES' SENTENCING MEMORANDUM

While on federal supervised release for illegal reentry, and after his deportation, the defendant committed that felony a second time, when he reentered the United States and settled in Indiana, where he lived for approximately one year without detection. But being on federal supervision and having no legal status in the United States did not dissuade him from committing the additional crime of transporting aliens. For the reasons set forth below, the government respectfully recommends that the Court impose a sentence within the applicable guidelines range.

**I.     OFFENSE CONDUCT**

The defendant is a citizen of Mexico with no legal status in the United States. Nonetheless, he entered the country without authorization at least three times. The defendant was previously removed from the United States in April 2010 and again in April 2021. The April 2021 conviction followed a federal felony conviction for illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(1). He was sentenced to 8 months' imprisonment for that offense. Undeterred, he unlawfully entered the United States again at some point before approximately February 2022.

On February 19, 2023, the defendant, who had driven from Indiana, was at the U.S.-Canadian border to pick up four individuals, whom he knew had illegally entered the United States from Canada. When he observed Border Patrol in the area, the defendant sped away, driving over

80 miles per hour. He temporarily eluded them. A short time later, Border Patrol observed the defendant again—and again the defendant sped off. Finally, when Border Patrol agents saw him a third time and attempted a stop, the defendant decided to stop his vehicle.[1]

The defendant was transporting four aliens (one of whom was his son)—all without legal status—in his vehicle. He intended to transport them to other places in the United States, including New Jersey and Indiana. Smuggled alien N.D.-R. told agents that the defendant initially was going to charge $1,000 for the ride, but after he learned that N.D.-R.'s daughter and his daughter were friends, the defendant told him he could simply provide gas money instead.

## II.     PRESENTENCE REPORT

The government has one objection to the guidelines calculations set forth in the presentence report, based on the defendant's objection. The defendant's objection "to the inference that he was speeding and/or traveling at rates in excess of 80 to 100 miles per hour during the course of the offense," PSR, dkt. 30, at p.18, shows that he has not accepted responsibility within the meaning of U.S.S.G. §3E1.1, and is not entitled to a 3-level departure.

"A defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. §3E1.1, cmt. n.1(A). But a "good-faith objection to material PSR statements that he disputes does not provide a proper foundation for denial of the acceptance-of-responsibility credit." *United States v. Delacruz*, 862 F.3d 163, 178 (2d Cir. 2017).

---

[1] The defendant disputes that he led Border Patrol Agents on a high-speed chase. For the reasons set forth in the government's response to the defendant's PSR objections, that position is not credible. Not only is it contradicted by the reports of the agents involved in the chase, and the statement of one of the smuggled aliens in the defendant's car, but the defendant's criminal record demonstrates that he had a strong motive for attempting to flee—he had already sustained a federal conviction for illegal reentry, served time in prison, and was on federal supervised release.

Here, the defendant's claim that he was not speeding is contradicted by the reliable accounts of the Border Patrol agents who attempted to stop him, the statement of one of the smuggled aliens who feared for his life in the defendant's car, and common sense.[2] These sources are explained in more detail in the presentence report and the government's response to the defendant's objection, found on pages 19 and 20 of the PSR. In summary, the defendant was first encountered at approximately 12:53 a.m., and was not apprehended until approximately 1:27 a.m. The Border Patrol Agents involved in the incident explained that they attempted to pursue the defendant, but he sped away and they terminated pursuit after losing visual. The defendant eluded law enforcement on the road twice before ultimately stopping his car. At that time of night, emergency lights would have been particularly noticeable. The post-arrest statement of one of the defendant's passengers corroborates the law enforcement reports. He stated that he told the defendant to stop the car during the pursuit because they wanted to get out; that he observed lights and sirens; and that he feared for his life during the pursuit.

The defendant's claim that he did not speed from law enforcement, nor did he see emergency lights, is a false denial of relevant conduct. That claim is a frivolous contention, which is incompatible with acceptance of responsibility. If the Court finds that as a result of this objection, the defendant has not accepted responsibility under §3E1.1, then his offense level would be 24. An offense level 24 and criminal history category III yields a guidelines imprisonment range of 63 to 78 months.

---

[2] At the Court's request, the government will provide copies of (1) Form I-213 documenting Altunar-Lopez's arrest; (2) the audio-recorded statement of alien L.G.-G., and (3) the audio-recorded statement of defendant, all of which are described in the Presentence Report and Addendum thereto.

The government has no other objections to the facts or calculations set forth in the presence report. The PSR accurately sets forth the maximum penalties for the offenses.

### III. GOVERNMENT'S SENTENCING RECOMMENDATION

A sentence within the guidelines range is sufficient but no greater than necessary to accomplish the purposes of sentencing, after considering the Section 3553 factors. In this case, the facts demonstrate that there is a particular need for the sentence to provide deterrence and just punishment. This is not the defendant's first offense, or a one-time mistake. He has been deported twice before, in 2010 and 2021. The first removal occurred when the defendant was found to be illegally present in the United States after his conviction for possessing more than 400 grams of cocaine, a felony for which he received a sentence of 6 years' imprisonment but served less than three. His removal in 2021 followed his federal conviction for illegal reentry, for which he served a sentence of 8 months' imprisonment. He was still under a term of supervised release when he committed these offenses. His conduct demonstrates that his prior punishments did not sufficiently deter him from committing crimes again. The guidelines sentence recommended here would result in the longest term of imprisonment that the defendant has served, and should provide a much-needed means of deterrence.

## IV.     CONCLUSION

The Government respectfully recommends that the Court impose a sentence within the applicable sentencing guidelines range.

Date: October 26, 2023                                         Respectfully submitted,

                                                               CARLA B. FREEDMAN
                                                               United States Attorney

                                             By:    /s/ Matthew J. McCrobie
                                                    Matthew J. McCrobie
                                                    Assistant United States Attorney
                                                    Bar Roll No. 702739